**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANTOINE MCKAY, #473585

       Petitioner,                Civil No. 2:08-11046

                                  HONORABLE STEPHEN J. MURPHY, III

v.

JERI-ANN SHERRY,

       Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

      Antoine McKay, ("Petitioner"), presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree murder, M.C.L. 750.316; and felony-firearm, M.C.L. 750.227b.  For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### BACKGROUND

      Mr. McKay was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

      Timothy Cook testified that he had been friends with Mr. McKay for eight years prior to the shooting.  Cook met up with Mr. McKay and his brother "Jay" at about 6:00 p.m. on the night in question.  Cook indicated that he drank two or three 40 ounce bottles of beer that night, although he claimed that he was not impaired.

      Cook testified that at about 2:00 a.m. that night, he was with Mr. McKay and his

1

brother at the French Quarter Apartments in Detroit. Mr. Cook heard Mr. McKay state that "he was tired of this mess and going to take care of business." Mr. McKay then began running towards the back of the apartments. Mr. Cook overheard Mr. McKay say that "he was going to kill somebody." Mr. Cook subsequently heard three gunshots. Cook testified that Mr. McKay was out of sight for about five to ten minutes before he heard the shots. After the shots were fired, Mr. McKay returned to the front of the apartments, holding a gun in his hand. Mr. McKay told Cook "I just killed somebody." The three men then left the apartment in Jay's car. The men stopped near Schoolcraft Road, where Mr. McKay disposed of the murder weapon.

Cook testified that prior to that evening, Mr. McKay had been attacked by his ex-girlfriend Yolanda Richardson's family three weeks prior to the shooting and had been carrying a gun for protection.

Christopher Young was the victim's friend. Young testified that the victim lived in the French Quarter Apartments with Yolanda Richardson. On May 28, 2003, Young was with the victim and Ms. Richardson. The three had gone out and when they returned about 1:00 a.m., they believed the Mr. McKay had tampered with the victim's car, and decided to confront him. Prior to the confrontation, Mr. Young went to get some cigarettes from his car. When he looked back, he observed Mr. McKay pointing a gun at the victim. Appellant was standing by the building doorway, and the victim was standing on the walkway. Young heard a gunshot, turned, and ran. Upon further questioning from the prosecutor, Young clarified that he actually saw Mr. McKay shoot the victim. Young admitted that he, Richardson, and the victim had been drinking that night.

Yolanda Richardson testified that Mr. McKay was her ex-boyfriend. Richardson

2

ended their relationship in February, 2003.  Richardson began dating the victim in April, 2003.  Richardson testified that Mr. McKay had previously threatened her and the victim with a gun, although she acknowledged that she never filed a police report about this incident.  Richardson testified that she was inside the apartment, when she heard a gunshot.  Richardson exited the apartment, where she saw Mr. McKay exiting the building going towards a white car.  Richardson saw Mr. McKay's brother, Damon "Jay" McKay and a man nicknamed "mon" in the car.  Richardson admitted that she did not actually see the shooting.

Officer R. Kibler testified that Cook showed the police where murder weapon had been discarded, but the police could not find the murder weapon.

Doctor B. Pietak performed an autopsy on the victim.  The cause of death was a single gunshot wound to left forehead, with no exit wound.  There was no evidence of close range firing.

Mr. McKay's conviction was affirmed on appeal.  *People v. McKay,* No. 251889 (Mich.Ct.App. February 15, 2005); *lv. den.* 474 Mich. 856 (2005).

Mr. McKay subsequently filed a post-conviction motion for relief from judgment with the Wayne County Circuit Court, which was denied.  *People v. McKay,* No. 03-008753 (Third Judicial Circuit, Criminal Division, March 21, 2007).  The Michigan Court of Appeals denied Mr. McKay leave to appeal.  *People v. McKay,* No. 277907 (Mich.Ct. App. October 23, 2007).

Mr. McKay then filed an application for leave to appeal to the Michigan Supreme Court.  While Mr. McKay's appeal remained pending in the Michigan Supreme Court, Mr. McKay filed a petition for writ of habeas corpus with the United States District Court for the

3

Eastern District of Michigan.  The petition was held in abeyance pending the completion of Mr. McKay's post-conviction appeal in the Michigan Supreme Court. *McKay v. Sherry,* No. 2008 WL 1808405 (E.D. Mich. April 21, 2008).

On April 28, 2008, the Michigan Supreme Court denied Mr. McKay leave to appeal. *People v. McKay*, 480 Mich. 1186 (2008).  This Court subsequently reinstated Mr. McKay's habeas petition to the Court's active docket. *McKay v. Sherry*, No. 2008 WL 2704683 (E.D.Mich. July 9, 2008).

Petitioner now seeks habeas relief on the following grounds:

I. Did the motion court abuse its discretion in denying appellant's motion to adjourn to retain counsel?

II. The Prosecution's closing arguments improperly set forth a personal belief in guilt and trial counsel's failure to object thereto amounts to ineffective assistance of counsel–thereby denying the appellant a fair trial.

III. Defendant-Appellant was denied effective assistance of counsel both in trial and appeal of right within the meaning of Michigan Constitution 1963, Article 1 & 20, and the Sixth Amendment of the United States Constitution.

IV. Defendant-Appellant's verdict is unreliable because the prosecution was not successful in reaching due diligence by not producing testimony of two prosecution witnesses that were endorsed.  The police officers from the scene would have favorable testimony for the defense and this would reflect misconduct on the prosecution under the "Brady rule."  Also a Pearson's hearing should be held to test if the prosecution exercised due diligence.  For these reasons in this issue Mr. McKay's U.S. Constitutional rights were violated under due process of a fair/impartial trial (U.S. Const. AMS V, XIV).

V. Defendant-Appellant's due process rights were violated when the trial judge committed a "structural error" when the instructions were read to the jury.  They were misread, the judge may not improv [sic] these instructions because of the confusion it causes and renders a great amount of prejudice against defendant.  Also an abuse of discretion for not producing transcripts.

VI. Defendant-Appellant's due process and fair/impartial trial rights were violated when during closing arguments prosecution attacked the credibility

4

of defendant's counsel. This is a clear violation when the prosecution is showing bias and demonstrating misconduct.

VII. Defendant was denied his due process of law and fair trial in violation of the Fifth, Sixth and Fourteenth Amendment by the cumulative effect of the constitutional errors that occurred at his trial.

## STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

**DISCUSSION**

A. <u>Claim # 1.  The Substitution of Counsel Claim</u>.

Mr. McKay first contends that the trial court erred in denying his motion for an adjournment so that he could retain new counsel after expressing dissatisfaction with his appointed counsel on the morning of trial.

On the morning of trial, Mr. McKay moved for an adjournment of trial in order to retain new counsel only moments before his jury trial was scheduled to begin.  Counsel informed the judge that he had only learned moments earlier that Mr. McKay had filed a grievance against him with Attorney Grievance Commission.  Mr. McKay claimed that his attorney had visited him in jail only once and had never provided him with the discovery. (Tr. 9/29a, pp. 5-7). [1]  The prosecutor informed the trial court judge that defense counsel had met with him several times to exchange witness lists and to receive additional discovery, as well as to discuss a plea bargain offer.  Defense counsel told the trial court judge that Mr. McKay didn't like that counsel had given him "an honest analysis of this case". (*Id.* at pp. 8-9).  The prosecutor informed the trial court judge that the murder victim's family was in court, had been very cooperative about resolving the case [through a plea bargain], and he did not want to put them through a "yo-yo." (*Id.* at p. 10).  The trial court judge denied Mr. McKay's motion, noting that the victim's family had been cooperative and she did not want them to have endure an adjournment of the case.  The

---

[1]  To avoid confusion, the Court will refer to the trial transcript from September 29, 2003 in front of Judge Diane Hathaway as Tr. 9/29a [this Court's Dkt. # 23-4], to differentiate it from the transcript from the adjournment motion that was argued later that morning before Chief Judge Timothy Kenny, which shall be referred to as Tr. 9/29b [this Court's Dkt. # 23-3].

6

trial court judge further reasoned that Mr. McKay could have made the request at an earlier date. The judge permitted Mr. McKay to appeal her decision to the chief trial court judge (*Id.* at pp. 6-7, 10-12).

Later that morning, before Chief Judge Timothy Kenny, Mr. McKay again requested an adjournment of the trial in order to obtain new counsel. Defense counsel informed Chief Judge Kenny that he had only been informed that morning that Mr. McKay had filed a grievance against him, even though he had visited him in jail the past Friday, after the grievance had been filed. (Tr. p. 9/29b, 3-4). Mr. McKay again claimed that defense counsel had visited him only once at jail in the past three months and had never provided him with the discovery. (*Id.* at p. 4). Counsel informed Chief Judge Kenny that he had visited Mr. McKay in jail three times, on July 16th, which was before the preliminary examination, on August 12th , and again on September 26th. Counsel reviewed the discovery with Mr. McKay during the August 12th visit. Counsel indicated that Mr. McKay had promised counsel that he would have information for him at the August 12th visit, but Mr. McKay failed to provide this information. On September 4th, counsel sent a letter to Mr. McKay, asking him to provide counsel with information so that he could provide a viable defense. Counsel again asked Mr. McKay to provide him with information for his defense at the pre-trial conference on September 9th. Counsel visited Mr. McKay on September 26th and had spent two hours at the jail. During the visit, counsel had informed Mr. McKay that the prosecutor had offered to allow him to plead guilty to a reduced charge of second-degree murder, with a sentence within the guidelines range of 12-25 years [on the minimum sentence]. On the morning of trial, the prosecutor had offered Mr. McKay an even better plea bargain, agreeing to allow Mr. McKay to plead guilty to second-degree

7

murder with a sentence agreement of 15-30 years, plus two years on the felony-firearm charge.  When counsel conveyed this offer to Mr. McKay, he informed counsel that he was not interested in the deal.  Counsel informed Chief Judge Kenny that as Mr. McKay was being brought out of his holding cell, he informed counsel that he had filed a grievance against him on September 21st.  Although defense counsel indicated that he was prepared for trial, he indicated that he was concerned about Mr. McKay's willingness to assist him in his defense and that an adjournment might be the safest course of action. (*Id.* at pp. 4-7).

Chief Judge Kenny denied Mr. McKay's request for an adjournment.  The chief judge indicated that defense counsel was very competent.  More importantly, the chief judge believed trial counsel's assertion that he had several pre-trial jail visits with Mr. McKay, and rejected Mr. McKay's claim that he had only met with his attorney once in the last three months (*Id.* at pp. 8-10):

> "I certainly credit Mr. Waske's [petitioner's trial counsel] recitation of factually what happened with regard to contact with Mr. McKay.  Mr. McKay finds himself in a position where on the morning of trial when all of the witnesses have been brought here to testify, that he is now producing a grievance that was filed against his attorney and producing it for Mr. Waske to know about it for the first time today on the day of trial." (*Id.* at p. 9).

On appeal, the Michigan Court of Appeals rejected Mr. McKay's claim:

> "Although defendant was asserting the constitutional right to be represented by counsel of his choice, he did not appear to have a legitimate reason for wanting to replace his appointed attorney, and he was negligent in waiting until the day of trial to raise the issue.  Although defendant questioned his attorney's preparation, counsel advised the court that he had met with defendant on several occasions, had examined the discovery package, and read and reviewed the witness statements with defendant, and was prepared to proceed with trial.  The case was straightforward, involving only one defendant and a few eyewitnesses.  The trial court did not abuse its discretion in denying defendant's motion for an adjournment.

8

Additionally, defendant has not demonstrated any resulting prejudice. The evidence against defendant was clear and overwhelming. Witnesses saw defendant with a gun, heard him threaten to kill someone, saw him point a gun at the victim's head, heard gunshots, and saw defendant run away, holding a handgun, saying that he had just killed someone. Defendant does not indicate how defense counsel's preparation was deficient, what a new attorney could have done differently, or what evidence a new attorney could have presented that might have made a difference in the outcome. Therefore, the trial court's denial of defendant's motion for an adjournment does not warrant a new trial.

*McKay,* Slip. Op. at * 1-2.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993) (*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id. (quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(*quoting Caplin & Drysdale,* 491 U.S. at 634-25). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 *(citing to Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's

9

authority to control its docket." *Lockett v. Arn,* 740 F. 2d 407, 413 (6th Cir. 1984); *See also Gonzalez-Lopez,* 548 U.S. at 151-52) ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them.... We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted).  Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

"A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner." *See United States v. Williams,* 176 F. 3d 301, 314 (6th Cir. 1999).  In determining whether a court abuses its discretion in denying a motion for substitute counsel, a reviewing court should consider the timeliness of the motion, the adequacy of the trial court's inquiry into the defendant's complaint, whether the conflict between the attorney and the client is so great that it resulted in a total lack of communication which prevented an adequate defense, and a balancing of these factors with "the public's interest in the prompt and efficient administration of justice." *Id. (citing United States v. Jennings*, 83 F. 3d 145, 148 (6th Cir. 1996)).

This Court first notes that Mr. McKay's request for a continuance to obtain new counsel was untimely because it was made on the day of trial.  Mr. McKay offered no reasons to the state courts or to this Court why he did not bring his dissatisfaction with his counsel up to the trial court earlier, particularly at the pre-trial conference on September 9th.  The Sixth Circuit has noted that when "the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute

continuance, the trial judge's actions are entitled to extraordinary deference." *U.S. v. Whitfield*, 259 Fed.Appx. 830, 834 (6th Cir. 2008) (*quoting United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)); *see also United States v. Reevey,* 364 F. 3d 151, 157 (4th Cir. 2004) ("a continuance request for the substitution of counsel made on the first day of trial is clearly 'untimely under all but the most exigent circumstances.'").  The Sixth Circuit has rejected similar requests as being untimely. *See U.S. v. Trujillo,* 376 F. 3d 593, 606-07 (6th Cir. 2004) (motion for substitution of counsel was untimely, coming only three days prior to the start of the trial); *Jennings,* 83 F.3d at 148 (motion to continue to obtain new counsel untimely when it was made the day before trial).  In the present case, Mr. McKay's request for a continuance to obtain new counsel on the day of trial was untimely, particularly where Mr. McKay had several opportunities prior to trial to bring his dissatisfaction with counsel to the attention of the trial court.  *Whitfield,* 259 Fed. Appx. at 834.

Moreover, in rejecting Mr. McKay's motion, Chief Judge Kenny seemed to imply that Mr. McKay was requesting the adjournment to stall the trial, because he was aware that the witnesses were in court and prepared to testify.  A defendant's right to counsel of choice may not be used to unreasonably delay a trial. *Linton,* 656 F. 2d at 209.

Third, both Judge Hathaway and Chief Judge Kenny sufficiently inquired into Mr. McKay's allegations of ineffectiveness against counsel.  In light of the fact that there were "multiple lengthy discussions" with Mr. McKay and his defense counsel about their alleged conflicts, there was no abuse of discretion in denying his motion for an adjournment to obtain new counsel. *See U.S. v. Vasquez*, 560 F. 3d 461, 467 (6th  Cir. 2009); *cert. den.* 130 S.Ct. 476 (2009).

In addition, Chief Judge Kenny explicitly rejected Mr. McKay's factual allegations

11

of incompetence against his defense counsel, finding defense counsel's version of the events to be more credible.  While the ultimate question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts underlying such an analysis are accorded the presumption of correctness in federal habeas proceedings.  *See Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000).  This is particularly so where credibility determinations are involved.  *See e.g. Mix v. Robinson,* 64 Fed. Appx. 952, 956 (6th Cir. 2003).  In order to overturn this presumption of correctness, a habeas petitioner must either show that the record as a whole did not support the factual determination or must prove by clear and convincing evidence that the factual determination was erroneous. *See Poole v. Perini,* 659 F. 2d 730, 736 (6th Cir. 1981).  Mr. McKay has presented no evidence to this Court to rebut the chief judge's factual finding that counsel had visited Mr. McKay in jail three times and had reviewed the discovery with him.

Finally, Mr. McKay is unable to show that he was prejudiced by the failure of the trial court to adjourn the trial, in light of the fact that he received effective assistance of counsel at trial. *Vasquez,* 560 F.3d at 468.  "The strained relationship" between Mr. McKay and his attorney was not a "complete breakdown in communication" that prevented Mr. McKay from receiving an adequate defense. *Id.*  Indeed, a review of the record shows that counsel actively participated in the jury selection process, including making a number of peremptory challenges (Tr. 9/29a, pp. 75, 80, 84, 88, 93, 96, 100, 102, 110), made an opening statement (*id.* at pp. 130-33), vigorously cross-examined the witnesses (Tr. 9/30, pp. 21-30, 46-56, 75), and made a closing argument which argued that Mr. McKay did not act with premeditation and deliberation, in that he was acting in self-defense, and should

12

be found not guilty. (*Id.* at pp. 105-112).

Mr. McKay is not entitled to habeas relief on his first claim, because the state

courts' decisions to refuse to permit Mr. McKay to substitute counsel were not contrary to

clearly established federal law as decided by the United States Supreme Court. *See Ray*

*v. Curtis,* 21 Fed. Appx. 333, 335 (6th Cir. 2001).

> B.     Claim # 2.  The Prosecutorial Misconduct-
>        Ineffective Assistance of Counsel Claims.

Mr. McKay next contends that the prosecutor impermissibly stated his personal

beliefs in Mr. McKay's guilt in closing arguments and that trial counsel was ineffective for

failing to object to the misconduct. [2]

Mr. McKay claimed that the following remarks by the prosecutor in his opening and

closing arguments were improper:

> The evidence in this case is overwhelming, I would suggest to you, that the
> Defendant has the intent to kill.  But, again, that's why this crime has three
> alternative categories for the state of mind for of [sic] at the time he did the
> physical act of shooting Mr. Clark. (Tr. 9/29a, 99).

---

[2]  Respondent contends that Mr. McKay's prosecutorial misconduct claim is
procedurally defaulted because he failed to object to the comments at trial.  Mr. McKay,
however, contends that counsel was ineffective for failing to object to the alleged
misconduct.  This Court notes that procedural default is not a jurisdictional bar to review
of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In
addition, "[F]ederal courts are not required to address a procedural-default issue before
deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th
Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy
might counsel giving the [other] question priority, for example, if it were easily resolvable
against the habeas petitioner, whereas the procedural-bar issue involved complicated
issues of state law." *Lambrix*, 520 U.S. at 525.  Ineffective assistance of counsel may
establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52
(2000).  Given that the cause and prejudice inquiry for the procedural default issue
merges with an analysis of the merits of petitioner's defaulted claims, it would be easier
to consider the merits of these claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836
(E.D. Mich. 2004).

13

Ladies and gentlemen, I ask you for justice. And when I ask you for justice I mean I ask you to take the facts and apply them to the law and come up with the appropriate verdict. And I would suggest to you that based on the law the appropriate verdict, there's only one verdict, and that's guilty as charged of murder in the first degree and guilty as charged of felony firearm. (Tr. 9/30, p. 105).

I would suggest to you that the evidence is strong that the Defendant committed murder in the first degree. But the law allows you to consider that lesser, and you should because that's your job. (Tr. 9/30, p. 115).

The only verdict in this case, ladies and gentlemen, that is appropriate is guilty of murder in the first degree or murder in the second degree and guilty of felony firearm. (Tr. 9/30, 119).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra*, 4 F.3d at 1355-56. In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d

14

731, 737 (6th Cir. 1999)(internal citations omitted).  A prosecutor, however, is free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt.  *Id.*  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999) (internal citations omitted).  It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F. 3d 486, 537 and n. 43 (6th Cir. 2000).  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

In the present case, as the Michigan Court of Appeals indicated in their opinion, *See McKay,* Slip. Op. at * 2, the prosecutor's remarks did not amount to improper vouching because they were made in reference to the evidence that was presented in court.  Moreover, the trial court judge instructed the jurors both before and after trial that the lawyers' arguments were not evidence. (Tr. 9/29a, pp. 112-13; Tr. 9/30, p. 122).  In this case, any alleged vouching did not rise to the level of a due process violation, in light of the fact that the jury was informed by the judge that the prosecutor's arguments were not evidence. *Byrd,* 209 F.3d at 537-38.

15

The Court also rejects Mr. McKay's related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claims, a habeas petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

Mr. McKay cannot show that counsel was ineffective for failing to object to the prosecutor's alleged misconduct, in light of the fact that the Michigan Court of Appeals found on direct appeal that the remarks were not improper. *See Finkes v. Timmerman-Cooper,* 159 Fed. Appx. 604, 611 (6th Cir. 2005). Because the prosecutor's comments did not amount to improper vouching, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Tinsley v. Million,* 399 F. 3d 796, 808 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his second claim.

C.     Claims # 3-7. Petitioner's Remaining Claims Are
          Procedurally Defaulted and Fail to Establish a Right to Relief

Respondent contends that Mr. McKay's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Mr. McKay raised his remaining claims for the first time with the state courts on post-conviction review.  The trial court judge denied Mr. McKay's claims, based on M.C.R. 6.508(D), including the portion of that court rule which indicates that a defendant may not obtain relief for grounds which could have been raised on appeal unless he showed good cause for failing to raise the claim on appeal and actual prejudice.  Both the Michigan Court of Appeals and the Michigan Supreme Court denied Mr. McKay's post-conviction appeals pursuant to M.C.R. 6.508(D).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In the present case, the Michigan Supreme Court, the last court to rule on Mr. McKay's post-conviction motion, invoked M.C.R. 6.508(D) to deny petitioner's claims. The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule and constitutes a procedural default of the claims. *See*

17

*Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation

to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar);

*see also Burroughs v. Makowski,* 282 F. 3d 410, 414 (6th Cir. 2002)(same); *Alexander v.*

*Smith*, 311 Fed. Appx. 875, 883-84 (6th Cir. 2009 )(confirming that *Simpson* and *Burrough*

are binding precedent, therefore, the Michigan Supreme Court's invocation of 6.508(D)

was sufficient to constitute a procedural default of petitioner's claims).  Mr. McKay's claims

are procedurally defaulted.

Mr. McKay alleges that appellate counsel's ineffectiveness in failing to raise

petitioner's third, fourth, fifth, sixth, and seventh claims in his appeal of right constitutes

adequate cause to excuse his procedural default.  Mr. McKay, however, has not shown

that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right

to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*,

463 U.S. 745, 754 (1983).  The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose
> on appointed counsel a duty to raise every "colorable" claim suggested by
> a client would disserve the ... goal of vigorous and effective advocacy....
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

> *Id.* at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good

arguments-those that, in the words of the great advocate John W. Davis, 'go for the

jugular,'-in a verbal mound made up of strong and weak contentions."  *Id.* at 753 (citations

omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are

18

"properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002) (internal quotations omitted). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (internal citations omitted).

Mr. McKay has failed to show that by omitting the claims presented in his post-conviction motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel filed a twenty one page brief which raised two claims on direct appeal. Mr. McKay has failed to show that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable so as to amount to cause that would excuse any default. *See Grant v. Rivers,* 920 F. Supp. 769, 782 (E.D. Mich. 1996). Moreover, because the defaulted claims are not "dead-bang winners," Mr. McKay has failed to establish cause for his procedural default of failing to raise all of his claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreove, assuming that Mr. McKay had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).

19

For the reasons stated by the respondent in their answer to the petition, Mr. McKay has failed to show that his remaining claims have any merit. A brief review of Mr. McKay's remaining claims bears this out.

In his third claim, Mr. McKay contends that trial counsel was ineffective for failing to call Jason Bucken and his brother Damon McKay as witnesses for the defense. Although Mr. McKay presented his own affidavit to the Michigan courts in his post-conviction motion, in which he claims that these two men would provide exculpatory testimony, Mr. McKay never attached affidavits from either man to his state post-conviction motion. By failing to present any evidence to the state courts in support of his claim, he is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Although Mr. McKay finally provided this Court with an affidavit from his brother, which he attached to his second reply, the affidavit does not contain sufficient facts for this Court to conclude that counsel was ineffective for failing to call Mr. McKay's brother as a defense witness. In the affidavit, dated October 29, 2009, Damon McKay, petitioner's brother, simply states that he was with his brother on the night in question and states "I believe that my testimony would have had an impact on the outcome of the case." Mr. McKay's brother does not elaborate further on the specifics of his proposed testimony. This affidavit from Mr. McKay's brother fails to establish that Mr. McKay was prejudiced by any failure of his counsel to contact Mr. McKay's brother or call him as a witness, because the affidavit does not state what specific or new information this witness would have provided if contacted or called as a witness. *See Brooks v. Bagley,* 513 F.3d 618, 630 (6th Cir. 2008); *cert. den .* 129 S. Ct. 1316 (2009).

20

In short, Mr. McKay has offered, neither to the Michigan courts or to this Court, any evidence beyond his own assertions as to what the content of these witnesses' testimony would have been.  In the absence of such proof, Mr. McKay is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support his ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, defense counsel indicated at the motion to adjourn trial that he had conferred with Mr. McKay several times prior to trial and had asked him to provide him with information in order that counsel could raise a viable defense, but Mr. McKay never provided this information.  When defense counsel is made aware that a potential witness may provide testimony that is beneficial to the defense, counsel's failure to interview the potential witness is ineffective.  *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007). In rejecting Mr. McKay's request for an adjournment, the chief judge credited counsel's testimony about the quality of his representation.  Implicit in the chief judge's ruling was a finding that counsel has asked Mr. McKay to provide him with information that would assist the defense, but that Mr. McKay failed to comply.  The presumption of correctness "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey v. Myers*, 74 Fed. Appx. 445, 448 (6th Cir. 2003) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)).  Because Mr. McKay has provided no credible evidence to rebut Chief Judge Kenny's implicit finding that he did not provide any information to counsel, Mr. McKay is unable to establish that counsel was ineffective for failing to investigate or call witnesses that he was unaware of. A defendant in a criminal case is not denied the effective assistance of counsel due to

21

defense counsel's failure to investigate or to call witnesses where the defendant failed to provide counsel with the names, addresses, and phone numbers of the witnesses. *United States v. King*, 936 F.2d 477, 480 (10th Cir. 1991);

Mr. McKay also claims that defense experts and investigators were never retained, prosecution experts and "fact-witnesses" were not adequately challenged, and favorable defense witnesses were never summoned to testify. Mr. McKay, however, has offered no specific facts in support of his claim, nor does he offer any argument as to how counsel was deficient in these areas or how he was prejudiced by such deficiencies. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Because these ineffective assistance of counsel claims are conclusory and unsupported, Mr. McKay is not entitled to relief on this claim.

In his fourth claim, Mr. McKay claims that the prosecutor failed to call Jason Bucken, Damon McKay, and several police officers to testify, because they were "res gestae" witnesses.

Federal law does not require the production of res gestae witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), No. 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988) (citing to *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)).

Suppression by the prosecution of evidence favorable to the defendant violates due process, where the evidence is material to either guilt or punishment of the defendant,

22

irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Mr. McKay has failed to offer any evidence to show that any of these witnesses would have presented favorable testimony on his behalf. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation." *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992) (internal quotation marks omitted), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999).

Mr. McKay has not otherwise shown that these witnesses would have exculpated him of these crimes. Petitioner is therefore not entitled to habeas relief on a claim that the prosecutor failed to call res gestae witnesses in compliance with M.C.L. 767.40a; M.S.A. 28.980(1), because issues of state law are not cognizable in federal habeas review, and the circumstances of this case do not reflect that Mr. McKay was denied fundamental fairness. *Johnson v. Hofbauer,* 159 F. Supp. 2d at 601

In his fifth claim, Mr. McKay claims that the trial court judge gave a defective instruction to the jurors on impeachment of witnesses by prior inconsistent statements.

The pertinent part of CJI 2d 4.5, the standard jury instruction, reads as follows:

> "There has been some evidence [that a witness/the defendant] made an earlier statement that did not agree with [his/her] testimony during trial."

The trial court gave the jury the following altered instruction to the jurors:

> "There *may have* been some evidence that a witness made an earlier statement that did not agree with his or her testimony during trial." (emphasis added).

Mr. McKay claims that the judge's altered language in the instruction on impeachment of prior inconsistent statements implied to the jurors that there may not have been any prior inconsistent statements.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* Moreover, a habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that

a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Hardaway v. Withrow,* 305 F.3d 558, 565 (6th Cir. 2002). Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In the present case, the jury instruction as given by the trial court adequately informed the jurors of the use of prior inconsistent statements to impeach a witness. Mr. McKay merely speculates that the trial court judge's slight change in the language of the instruction lead jurors to believe that there had been no prior inconsistent testimony in this case. Mr. McKay's contention that the altered jury instruction lead jurors to believe that none of he witnesses had made any prior inconsistent statements is "too speculative to justify the conclusion that constitutional error was committed." *Henderson*, 431 U.S. at 157; *See also Hudson v. Berghuis*, 174 Fed. Appx. 948, 955 (6th Cir. 2006).

Mr. McKay further contends that the trial court judge erred in refusing to read back Timothy Cook's testimony.

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 Fed.Appx. 468, 477 (6th Cir. 2006). The reason for this is that there is no United States Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley,* 192 Fed. Appx. at 477; *Spalla v. Foltz,* 615 F. Supp. 224, 233-34

25

(E.D. Mich. 1985).

In his sixth claim, Mr. McKay claims that the prosecutor improperly denigrated defense counsel by referring to him as a "spin doctor."  Mr. McKay also claims that the prosecutor, when referring to the verdict form, stated: "If the law was the way Mr. Waske said it, you wouldn't have guilty of murder in the second degree there."

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. 469, 480 (6th Cir. 2007) (*quoting United States v. August*, 984 F.2d 705, 715 (6th Cir.1992)).  Thus, a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*

Mr. McKay is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx 445, 447 (6th Cir. 2005).  The prosecutor's sarcastic comments were not so incendiary so as to inflame the jury's passion or distract them from determining Mr. Mckay's guilt or innocence. *See Davis v. Burt,* 100 Fed. Appx. 340, 348 (6th Cir. 2004).  Finally, the prosecutor's remarks were brief and fairly isolated and were part of a larger argument that focused on the evidence in the case.  The trial court instructed the jury both before the opening arguments and after closing arguments that the lawyers' arguments were not evidence.  The prosecutor's remarks were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily

26

on summarizing the evidence presented at trial. *Byrd*, 209 F.3d at 532.  When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's comments did not render the entire trial fundamentally unfair. *Id.* at 533.

In his seventh claim, Mr. McKay alleges that he was deprived of a fair trial because of cumulative error.  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002).  Therefore, Mr. McKay is not entitled to habeas relief on his cumulative errors claim. *Id.*

Finally, this Court is aware that Mr. McKay could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).  For the reasons that follow, however, habeas relief is not warranted on such a claim.

This Court has already concluded that Mr. McKay has failed to show that appellate counsel was deficient in failing to raise petitioner's third through seventh claims on appeal. Moreover, Mr. McKay is unable to show that he was prejudiced by appellate counsel's failure to raise these claims, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *see also Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on Mr. McKay's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise

27

these claims on the appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1ˢᵗ Cir. 1987)). In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided. *Gardner*, 817 F. 2d at 189.

### A Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a

28

federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Mr. McKay has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006). The Court will also deny petitioner leave to appeal *in forma* pauperis, because the appeal would be frivolous. *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## CONCLUSION

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner will be denied leave to appeal *in forma pauperis.*

**SO ORDERED**.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 23, 2009

29

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 23, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager